Good morning Your Honor's Counsel. My name is Lewis Maffey. I represent the appellant in this case, James Lamalskiou Lowe. As you know, my brief introduction has been raised to several evidentiary issues that we think are fairly interesting. I'll start by addressing what we've characterized as the Brady violation in this case. Your Honor, can I just ask you a question right off the bat? Listen, you can't sustain a Brady violation if your client knew about the Shane report, right? Well, he knew that the victim in this case had been taken to the hospital. He didn't know the actual document that was generated by that. All he knew was that something existed that detailed her injuries and that it was important to his case that he obtain them. Did he ever try to get a pre-trial or during the trial? He, obviously, had made several requests to the government. He filed several appraisal motions requesting that they turn over this document. I received it at the hospital. He did not, and there's a reason for that, Your Honor. As you know, he was a pro-court litigant, so he was not educated at all. Your Honor, whose fault is that? He preferred him to get a copy of the Shane report from the hospital. He would have either had to have the victim allowed to get away, or which, I seriously doubt, was going to occur. The second thing that he could have done was to ask the court for an order that would allow him to see the document directly from the hospital. And he didn't do that. However, given the court's position when he raised this issue down the road, that the court didn't find that it was favorable, didn't find that it was suppressed, didn't find that it was material, I seriously doubt that the court would have issued an order allowing him to obtain that report from the hospital. And so I would submit to the court that even if he did make the effort to try to obtain that report, the court would have issued an order, and the victim would have never had to allow him to waiver so he could have obtained it. Why then would it be a Brady-type violation if the court was of the view that you just described? It doesn't qualify as a Brady violation, does it? Well, Your Honor, it's our position that it's a Brady violation, because this is something that the government knew existed. Yeah, but what is it? What's its use? How does it help? And I thought you had just said that the court concluded that it really was not of any help in this case. Correct. And so in order for it to be a Brady violation, there's got to be three factors. We have one, that it's favorable to the accused. We believe that it's favorable to the accused because the domestic violence allegations are intertwined with the charges in this case from the very beginning, if you had his report. It is true. Is it with court or no court record? It is. It's in the access record, Your Honor. And to the argument that he's trying to say, well, I came to solicit a scheme, a hospital, and don't you just prefer to show that the government has possession of this document? It's our position that the government had constructive decision. Constructive decision. And how did they get that? Because the co-government federal agency and a state agency are different, I thought. My understanding was that they have no control over what the state does, what the state does. Are you asking how he finally obtained the report? No, I'm asking for your basic premise that they have the power to give it up. A constructive decision? I've never heard of a constructive decision. What we've decided in cases is that when the government, even if they know something that happened in a state hospital, that they have control over that under Brady. What's your best case? Your Honor, I would say, as you've kind of stated, Whitley, in that if there is an agency that the government is working with, does he prefer an agency that the government is working with? Your Honor, it's our position in this case that the investigation was initiated by a state agency, issued by Los Angeles Metro, and there came a point in time. Because the police came and arrested your client? The police came and arrested our client. The police were the ones who generated the vast amount of discovery, which the government then relied upon in order to obtain search warrants and in order to secure the conviction against Mr. Lowe. If you look at the trial, not only is the discovery generated by a state agency, but there's many scene actors, many police officers and detectives that the government calls to talk about what happened. How he was arrested, the allegations regarding the domestic violence. And so it's our position that because the federal government was working alongside with the state agencies and that they were actually using documents that they were generating, and in fact it's our position that they were actually cherokeeing documents that they wanted to use and then leaving the documents that they didn't want to use out of their possession so they could almost shield themselves from the discovery by Leach House. So how might your client have benefited, or let me say it the other way, how was your client prejudiced by not having the same report? Your Honor, it's my belief that Miss Lowe's allegations are inextricably tied to the criminal charges. And so it was Mr. Lowe's. He tried to do a trial. He felt that if he could undermine her credibility that he would be able to, well, in retrospect, change the outcome of the case. Undermine her credibility just generally based on the previous domestic abuse allegations, or what? Generally, yes, generally. And specifically in that one of the things that the senior court contained was information that she had been ingesting marijuana. At least there was marijuana in her system. And I think that he would have been able to make a case, you know, allegory to infer that it was possible she may have been under the influence either at the time that the incident occurred or at other points in time when she was relating to the police. This guy's a drug dealer. This guy's got guns. You know, that's a pretty genuine statement that, well, it could be. But it's also, I think, would provide him a basis to try to directly undermine the allegations he's making against him. Yes, of course. Anything else besides that that you could have used as a report for your perspective? Well, in terms of, yes, because the government elicited testimony from several police officers regarding the injuries that they saw. And there was some testimony about what he was alleged to have done. And those were from statements that came directly from the detective in this case. And so his sort of position at the senior court, how he went on to cross-examine her, or even cross-examine the nurse who generated the report, he would have been able to show the jury that the allegations she was making or some of the allegations she was making were untrue and involved another incident. Well, the incident is tied into the criminal charges here. It was the incident that brought the police to his door, to his testimony of previous domestic violence situations as well. And, you know, that was probably one of the problems with this case is that from the very beginning the government put him on notice that they were going to try to use this domestic violence incident against him. And he knew that this was going to be, you know, potentially used as character evidence. And that's why he was trying so hard to get the senior reporter from the first minute he talks to detectives through his interrogation up until the middle of trial where he's cross-examination. And it was always his position that this report was going to help him to underline the credibility of this reporter. And because he didn't know how to do it properly, the government had a Brady obligation to give it to him. Well, I believe that he wouldn't have been able to get the report even if he had called his own team. So how does that impose a Brady obligation on the government that it wouldn't have in another context? You're trying to be represented by competent counsel. We wouldn't be here because there really would be no question that the government didn't have a Brady obligation. You're trying to have a way to get the document himself. We'll know about its existence. Incorrect, David. I also see so. Why is it the fact that he chose to represent himself imposes additional obligations under Brady on the government? I'm not saying that it does. But I do believe that the government had an obligation under the discovery disclosures statement where he talks about they would agree to give reports regarding witnesses under the rule of criminal procedure 16. I believe it's subsection A, subsection 1, subsection M. And not only does the report contain information about her injuries, and I believe he could have used to undermine her credibility, but it also contained paraphrased statements of the incident that occurred that night. So I believe that not only because of the injuries, but because of the statements, the government had an obligation to give this initial evidence over to Mr. Lowe. Other than what you told Judge Walz about a constructive possession, is there any evidence that the authorities, in this case the prosecutors, had a copy of the same report in its possession? If you look at the same report, which is in the accident records, I apologize, I didn't have the citation available. At the end of the report, the author, the nurse conducting the evaluation, indicates that she reported her findings to the detective, I believe it was Detective Ouch, who was at the state office. That's the same problem that my colleague mentioned. This is a federal situation here in the same sense that the federal government doesn't have control over a state hospital. How would whatever was said to the state or municipal detective be attributable to the federal government? Well, it's our position that because they're working in tandem to secure this conviction, essentially if the federal government does not have to worry about any constructive possession of these documents, they could essentially cherry-pick what they want from the detective's file to build a case and leave the rest. And if this is a repeating yourself for your earlier answer, your earlier answer to me was a Supreme Court case that allows you to do it, I looked up your Supreme Court case, and it says no to others acting on the government's behalf, including the police. Correct. But there's nothing that says that it includes other entities, such as a county hospital, which is far different from the police. And you're making a joke for what we've already said. If the state police are working with the feds, then you can get to what the feds, state police, have. But it says nothing about a county hospital. That isn't connected at all. Do you have a piece that goes that far? Apparently I have in front of me. Oh, I wouldn't. It's not our position that it was only in the possession of the county hospital. We believe that the state didn't have a copy. In fact, we know the state didn't have a copy because when he was indicted on this case, he had the companion case with the state court, and that was how he ultimately obtained the state court report was from his defense attorney in the state case who got it from the DA. And the DA, obviously, well, where is that threat? I don't believe any of this. Well, I was going to ask you before. Actually, there's a footnote in my brief. I can't remember what page it's on, but it talks about how the state case was split up from the federal case. But it's not the issue of the federal case. Yes, it would be. It should be in my blue brief. It should be in the footnote. Once again, I know you're a really great director. Thank you. And it's the one of the provisions or the test put forward by U.S.B. Bryant is whether being what the extent to which the prosecutor has knowledge of this document or has access to it. And it's our position that they clearly had knowledge of it, and because they're working so closely with the state agencies and have any proof of that. Well, one of the things that we asked for in our motion was an evidentiary hearing so they could prove some of these allegations. But it's my position that it had the state turned over the report in the state case, and so they had it. We believe that the federal government was aware of it, especially since they actually called the author of the report at trial, and I think I need to see the rest of my time. Thank you very much. Thank you. Thank you. Well, I'm going to go to our next witness. Good morning, again, everyone. Peter Levin from the United States. The court's questioning is perfectly correct regarding the alleged Brady violations. Brady claims such as it is held for any number of reasons. Brady's first requirement is that the government suppress evidence in its possession, and this was not in the government's possession. This was generated by a Kentucky hospital state to get those narcotics out. You haven't permitted further limited waiver to certain state actors, and there's no evidence, and there's no evidence presented to Judge Dorsey that the United States government, which was prosecuting not of domestic violence and strangulation but of federal firearms possession that the narcotics distribution was working, and the court had this document. So they failed the first prong of Brady. Alternately, they failed the first prong of Brady because, if your honor is correct, the question is, Clow was perfectly well aware that the woman he had strangled went to the hospital that night. The report had been created. He could have but did not obtain that report. If that doesn't answer your question, what if there's a Brady violation? Well, the whole thing, if it does go to the first Brady prong, your honor, this court has, in a case cited in the capturing brief, that if the Aishella case, that when a defendant has enough information to be able to ascertain this close Brady material on his own, there is no suppression under Brady's first prong by the government. So he slumps the first two Brady prongs for two distinct reasons. Assuming he can clear those thresholds, which he can't, then we get to the third one. How is this material? It's not material. The district court's found, and it's abundantly clear from the record, and it's set forth in Clark's Record 265 at page 14, that Clow conducted a vigorous cross-examination of the victim more on all points. So for neither of these reasons, there is no Brady violation under this court's precedent, and, indeed, trial versus witness is a great court precedent. Turning to the use of the domestic violence evidence, the government is not inexplicably intertwined with a gun and drugs general prosecution. The government mentioned why the police mentioned the domestic violence as a way to show why the police were dispatched to this house, this apartment. In the first case, the prosecutor said in an opening statement, this is not a domestic violence case. This is a gun and drug case. We're just doing this to show why are the police there. And after that preliminary foundation evidence was sent, the government's order of proof pivoted quickly to the material federal elements, the color of Ms. Moore's carpet, the camel-covered carpet. Why were we asking her about that? Because Clow, on low cell phone, took a picture against the backdrop of the camel-colored carpeting and the gun that he called Moore and Isolde five days before the meeting. And we didn't dwell on the issues of domestic violence in laying a threshold foundation. Now, later in the trial, after Clow was delving into issues of rape, the district court was admonishing him. Mr. Clow, no one's mentioned this except you. He persisted in this and then decided to keep the stand in his own defense. And the district court very carefully warned him about what he would expose himself to under not 404B but 404E2B, which says if you attack a victim of a crime for a certain trade, basically all bets are off. Clow persisted, said he was out feeding homeless people and came back home and said Moore started a fight with him, accused him of cheating, and attacked her credibility at every turn on matters involving domestic violence. And the government responded. As the district court warned Clow, the government was going to respond. And there's nothing objectionable about that. And as Judge Clifton's questions, I know he suggested and Mr. Gaffney had a skilled defense attorney been representing Clow at trial. Clow probably would not have opened that door, but he represented himself as a true, fully adequate for writing canvases, and he chose to make that decision. I believe most of the other issues are covered in the government's answering brief. Do members of the court have any further questions? I believe we do. Thank you, everybody. There's a hand in the aisle. I'll go to Judge Clifton. Judge Ball, this is the footnote that I was looking for. It's actually in the rubble I see from page 7, and it talks about how the charges, the charges that he faced in the federal court, actually originated in secret. It doesn't go into detail about that, but there is a mention of it. One of the things I'd like to respond to is that you've got the charges that sort of originated in state court, correct? Yes, the gun and drug trafficking. All the charges in this case originated in state court, and they were the federal government picked up the gun charges and drug charges. So, back in 2014, battery domestic violence and sex assault charges were made in state court. There was a gun charge, and a drug charge made in state court. Originally, it was, I believe there was a criminal complaint filed in state court with those charges. The Las Vegas Metro initiated this investigation. Federal government later took it over, and that's the point that I've been trying to make in terms of the position of documents in that the Metro initiated the investigation and didn't even continue to investigate certain aspects of it, even after the federal government picked up the gun and drug charges. The one point that I did want to make, though, was in regards to the government using this as background evidence. To that, I would say if it truly was contextual, had only a contextual function, then they didn't need to dive into the details of the battery domestic violence injuries, the redness on the neck, the arm mark, the full extent of all of the injuries that came out, all this thing by the government through a mix of officers. If it was merely background, they could have just told them there was a domestic disturbance, police arrived, there was a couple of calls that went in, the arresting was flown over. I think we have your position. Thank you both for your argument. The case just argued is vetted. And now we move on to our argument in the final case for the day, which is Portman v. Holland upon Airways at Long Island.
judges: Wallace, Clifton, M. Smith